CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
July 08, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| FRED E. PRYOR, | ) | |
| Plaintiff, | ) | Civil Action No. 7:23cv00541 |
| v. | ) | **MEMORANDUM OPINION** |
| VIRGINIA CHESTNUT, *et al.*, | ) | By:  Hon. Thomas T. Cullen |
| | ) |       United States District Judge |
| Defendants. | ) | |

Plaintiff Fred E. Pryor, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against medical staff at the Middle River Regional Jail ("Middle River"). This matter is before the court on Defendant Physician Assistant ("PA") Ober's motion to dismiss.[1] Having reviewed the pleadings, the court will grant PA Ober's motion.

**I.**

Pryor alleges that he began his incarceration at Middle River on November 22, 2022, and, when he arrived there, he told a nurse that he needed a CPAP machine[2] for his sleep

---

[1] The other defendants have also filed a motion to dismiss which the court will address separately. (*See* ECF No. 27.)

[2] "A CPAP (continuous positive airway pressure) machine is used in the treatment of sleep apnea. This device delivers continuous pressurized air through tubing into a mask that you wear while you sleep." Cleveland Clinic, *CPAP Machine*, available at https://my.clevelandclinic.org/health/treatments/22043-cpap-machine (last visited June 11, 2024). A CPAP machine is not the only treatment available for sleep apnea. Mayo Clinic, *Sleep apnea, Treatment*, available at https://www.mayoclinic.org/diseases-conditions/sleep-apnea/diagnosis-treatment/drc-20377636 (last visited June 11, 2024).

apnea[3] and an extra blanket for his cold urticaria.[4] (Am. Compl. at 5 [ECF No. 8].) He asserts that the nurse advised him that "it would be noted." (*Id.*) Months later, presumably after not receiving a CPAP machine,[5] Pryor filed a grievance and the head nurse responded to advise Pryor that he "needed to take another sleep study test." (*Id.*) Pryor states that he has "no problem" with taking another test but argues that he had already signed a form allowing the Veteran's Hospital in Salem, Virginia, to release his medical records to the jail, and that those records show that he has been diagnosed with sleep apnea. (*Id.*) Notably, Pryor does not allege that a doctor has determined that a CPAP machine is necessary to treat his alleged sleep apnea. Pryor states that nearly 10 months after his initial intake, he was still waiting for an appointment for a sleep study test and/or a CPAP machine. Pryor also contends that he was eventually housed in segregation at Middle River so that he could be isolated from other inmates because his sleeping disrupted their sleeping. Pryor does not describe any symptoms or complications of sleep apnea that he experiences.

---

[3] "Sleep apnea is a potentially serious sleep disorder in which breathing repeatedly stops and starts." Mayo Clinic, *Sleep apnea*, available at https://www.mayoclinic.org/diseases-conditions/sleep-apnea/symptoms-causes/syc-20377631 (last visited June 11, 2024). There are three main types of sleep apnea: (1) obstructive sleep apnea ("OSA"), "which is the more common form that occurs when throat muscles relax and block the flow of air into the lungs"; (2) central sleep apnea ("CSA"), "which occurs when the brain doesn't send proper signals to the muscles that control breathing"; and (3) treatment-emergent central sleep apnea, "also known as complex sleep apnea, which happens when someone has OSA — diagnosed with a sleep study — that converts to CSA when receiving therapy for OSA." (*Id.*) Pryor does not indicate which type of sleep apnea he has been diagnosed with. The most common symptoms of OSA and CSA include loud snoring, difficulty breathing, dry mouth, morning headache, difficulty maintaining sleep, excessive daytime sleepiness, difficulty paying attention while awake, and irritability. *Id.* Pryor does not describe which, if any, of these symptoms he experiences.

[4] Cold urticaria is "a skin reaction to cold that appears within minutes after cold exposure. Affected skin develops itchy welts (hives). People with cold urticaria experience widely different symptoms." Mayo Clinic, *Cold urticaria*, available at https://www.mayoclinic.org/diseases-conditions/cold-urticaria/symptoms-causes/syc-20371046 (last visited June 11, 2024).

[5] It is unclear from the complaint whether Pryor received the extra blanket he also requested at intake, but he does not complain about not receiving it in this action.

Pryor alleges that, at a medical appointment with defendant PA Ober on an unspecified date, Pryor asked Ober about a CPAP machine. He states that PA Ober left the room and, when he returned, he advised Pryor that he would "see what we can do." (Am. Compl. at 3.) Pryor asserts "[t]hat was the end of it," he never received a report from PA Ober, and that he still had not received his CPAP machine at the time he filed this action in September 2023—approximately 10 months after he arrived at Middle River.

PA Ober filed a motion to dismiss, arguing that Pryor failed to allege sufficient facts to establish that Ober (1) had a duty to furnish a CPAP machine, (2) had the authority to issue or prescribe a CPAP machine, or (3) failed to write a prescription for a CPAP machine.

In response to the motion to dismiss, Pryor argues that PA Ober "showed negligence by not following up/making an attempt to get [him] a C []PAP machine after being alerted of this at a provider exam." (ECF No. 36 at 1.) Pryor argues that PA Ober is "the actual person over [the medical] department" and, "as a medical provider in the medical field, [PA Ober] should know or inventory his medical supplies" and "order [] or hav[e] on hand what [is] need[ed by] people who are arrested and brought into the facility."[6] (Id. at 1–2.)

---

[6] Pryor also asserts in his response in opposition to PA Ober's motion that after filing this action, Pryor was transferred to Nottoway Correctional Center ("Nottoway"), Ober did not "make sure" that Pryor's "need" for a CPAP machine was communicated to Nottoway staff before the transfer, and, consequently, Pryor had to start the "process . . . all over again." (ECF No. 36 at 1.) The court does not construe this assertion as a new claim. *See Marsh v. Virginia Dep't of Transp.*, No. 6:14cv6, 2014 U.S. Dist. LEXIS 167333, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014) (collecting cases) ("It is axiomatic that the complaint may not be amended, without a motion to amend or supplement, by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief."). Further, the court notes that Pryor does not allege that any doctor or medical professional determined that at CPAP machine was necessary to treat his alleged sleep apnea, either at Middle River or before he arrived there. In his response in opposition to PA Ober's motion, Pryor also notes that after his transfer to Nottoway, he "did [a] sleep test in Richmond" and then was transferred to State Farm Correctional Center where he awaited the results. (*Id.* at 2.) The court has not been (and need not be) updated as to the results of the testing.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

### III.

To the extent Pryor argues that PA Ober was deliberately indifferent to Pryor's request for a CPAP machine, his allegations against Ober fail to state a viable § 1983 claim.[7] Accordingly, the court will grant PA Ober's motion to dismiss.

The government is required to provide medical care for incarcerated individuals, but not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." *Estelle v. Gamble*, 429 U.S. 97, 103−105 (1976). To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Id.* at 105; *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A serious medical need is "one that has been

---

[7] The court notes that Pryor does not allege that he ever asked PA Ober for a blanket or that Ober had any knowledge of Pryor's request for a blanket.

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (internal quotation marks omitted). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Further, "prisoners do not have a constitutional right to the treatment of his or her choice." *King v. United States*, 536 F. App'x 358, 362–63 (4th Cir. 2013) (internal citations omitted). A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975);

*Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

To be sure, intentional delay of, or interference with, medical treatment can amount to deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). But the Fourth Circuit has held that there is "no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 F. App'x at 755 (citing *Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008)); *see also Shame v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)). Substantial harm may also be "'a lifelong handicap or permanent loss.'" *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* at 758 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)) (emphasis added).

Pryor's allegations that he met with PA Ober on one occasion, asked for a CPAP machine, was told that Ober would "see what they can do," and then never received an update or CPAP machine simply do not rise to the level of a constitutional violation. Fatally, Pryor does not allege that any medical professional ever determined that a CPAP machine was necessary to treat his alleged sleep apnea. He also fails to allege which, if any, symptoms and/or complications he experienced. And he also does not contend that any symptom or

complication he may have experienced worsened while he waited for a sleep study test or a CPAP machine. Pryor's bald assertion that PA Ober was "negligent" is not sufficient to state a constitutional violation.

## IV.

To the extent Pryor alleges that PA Ober is liable for any constitutional violation under a theory of supervisory liability because he is "over [the medical] department," his allegation still fails to state a cognizable § 1983 claim.

It is well established that a supervisory government official cannot be held liable under § 1983 for the actions of his subordinates based solely on the principle of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). Nonetheless, a supervisory official may be liable for his subordinate's acts if the supervisor himself bears personal responsibility for those acts. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

To prevail on a claim for supervisory liability, a plaintiff must show the "*Shaw* elements":

> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's

> inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Establishing a "pervasive" and "unreasonable" risk of harm under the first element requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Slakan*, 737 F.2d at 373−74. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373. Overall, "[t]he plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," for "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Id.* at 372 (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)) (alteration in original). "[H]e cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents." *Id.*

Pryor's allegations are far too vague and conclusory to establish the *Shaw* elements against PA Ober. Based on the pleadings, the court cannot conclude that PA Ober was deliberately indifferent to, or tacitly authorized, any denial or delay of Pryor's medical treatment for a serious medical need.

## V.

For the reasons discussed, the court will grant defendant PA Ober's motion to dismiss Pryor's claims against him.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 8th day of July, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE