CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

July 16, 2024

LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FRED E. PRYOR, | ) |
| Plaintiff, | ) Civil Action No. 7:23cv00541 |
| v. | ) **MEMORANDUM OPINION** |
| VIRGINIA CHESTNUT, *et al.*, | ) By:  Hon. Thomas T. Cullen |
|  | )       United States District Judge |
| Defendants. | ) |

Fred E. Pryor, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against medical staff at the Middle River Regional Jail ("Middle River"). This matter is before the court on a motion to dismiss filed by defendants Nurses Virginia Chestnut, Sarah Lindamood, and Erica Miller.[1] Having reviewed the pleadings, the court will grant the defendants' motion.

## I.

Pryor began his incarceration at Middle River on November 22, 2022. Pryor claims that after he arrived, he informed defendant Nurse Lindamood that he needed a CPAP machine for his sleep apnea and an extra blanket for his cold urticaria, and Lindamood advised him that "it would be noted." (Am. Compl. at 5 [ECF No. 8]; *see also* Mem. Op. pgs. 1–2 n.2–4, July 8, 2024 [ECF No. 41] (defining CPAP machine, sleep apnea, and cold urticaria.) Months later, presumably after not receiving a CPAP machine,[2] Pryor filed a grievance and defendant

---

[1] By Order entered July 8, 2024, the court granted defendant Physician Assistant Ober's motion to dismiss. (*See* ECF No. 42.)

[2] It is unclear from the complaint whether Pryor received the extra blanket he also requested at intake, but he does not complain about not receiving it in this action.

Nurse Chestnut responded to advise Pryor that he "needed to take another sleep study test." (Am. Compl. at 5.) Pryor states that he has "no problem" with taking another test but argues that he had already signed a form allowing the Veteran's Hospital in Salem, Virginia, to release his medical records to the jail, and that those records establish that he has been diagnosed with sleep apnea. (*Id.*) Pryor does not allege that a doctor has determined that a CPAP machine is necessary to treat his alleged sleep apnea. Pryor states that, nearly 10 months after his initial intake, he was still waiting for an appointment for a sleep study test and/or a CPAP machine. Pryor also states that he was eventually housed in segregation at Middle River so that he could be isolated from other inmates because his "condition"—presumably his snoring—disrupted their sleeping, although Pryor's amended complaint does not describe any symptoms or complications of sleep apnea that he experiences.

Pryor contends that Nurse Chestnut "deprived [him] of [his] rights" by having him sign a release form for his medical records and then telling him that he needed to undergo another sleep test. (*Id.* at 2.) He argues that when he inquired about a CPAP machine, Nurse Lindamood answered him with a "snide remark" that she "didn't know about [the] sleep test" and that he should have someone bring his CPAP machine from home to the jail. (*Id.*) And he argues that Nurse Miller answered his inquiry about the CPAP machine by saying she "d[id]n't know what to tell [him]." (*Id.* at 3.)

The defendants filed a motion to dismiss and, in response, Pryor reiterates statements from his amended complaint and adds that, when he asked Nurses Chestnut and Miller on separate occasions about the status of obtaining a CPAP machine, Nurse Chestnut asked "if

[Pryor] had one at home" and Nurse Miller said he should "call someone" to bring his to him.[3] (ECF No. 35 at 1–2.) He also asserts that he experienced "restlessness and annoying snoring as well as cell mates waking [him] up because [he] stop[ped] breathing for 2–30 seconds." (*Id.* at. 2.) He states that he "removed himself from [general] population [housing] due to the unfairness of [his] medical condition[, presumably on his cell mates,] and the jail saying [that] no single cells were available." (*Id.*) He alleges that he "stayed in segregation for 30 days" at Middle River. (*Id.*)

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be

---

[3] Pryor states that he could not call someone to bring his CPAP machine from home because a court order prevented him from contacting his family.

enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

### III.

To the extent Pryor argues that the nurse defendants were deliberately indifferent to Pryor's request for a CPAP machine, his allegations against them fail to state a viable § 1983 claim. Accordingly, the court will grant the defendants' motion to dismiss.

The government is required to provide medical care for incarcerated individuals, but not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." *Estelle v. Gamble*, 429 U.S. 97, 103−105 (1976). To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Id.* at 105; *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (internal quotation marks omitted). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation that is redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the

conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Further, "prisoners do not have a constitutional right to the treatment of his or her choice." *King v. United States*, 536 F. App'x 358, 362−63 (4th Cir. 2013) (internal citations omitted). A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

To be sure, intentional delay of, or interference with, medical treatment can amount to deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). But the Fourth Circuit has held that there is "no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 F. App'x at 755 (citing *Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008)); *see also Shame v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)). Substantial harm may also be "'a lifelong handicap or permanent loss.'" *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). "[T]he length of delay that is tolerable depends on the seriousness of the

condition and the ease of providing treatment." *Id.* at 758 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)) (emphasis added).

Pryor's allegation that he asked the nurse defendants for a CPAP machine and they did not provide one to him, without more, does not rise to the level of a constitutional violation. Pryor does not allege that any medical professional ever determined that a CPAP machine was necessary to treat his alleged sleep apnea. He does not allege that any of the nurse defendants had the ability or authority to provide him with a CPAP machine without a doctor's order. He also does not allege that any symptom or complication he may have experienced worsened while he waited for a sleep test or a CPAP machine. To the extent Pryor asserts that any of the nurse defendants were "negligent" or that their bedside manner may be lacking, his allegations are not sufficient to state a constitutional violation.

## IV.

For the reasons discussed, the court will grant the defendants' motion to dismiss Pryor's claims against them.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 16th day of July, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE